## STROTHER v. HAMILTON. (No. 1133.)

(Court of Civil Appeals of Texas. Beaumont. Jan. 21, 1925.)

1. Deeds ⊛═193—Proof of actual possession by plaintiff's distant grantor held not prerequisite to warrant presumption of execution of deed by original grantor to such grantee.

Proof of actual possession of land by plaintiff's distant grantor before conveyance to a subsequent grantee *held* not prerequisite to warrant presumption of execution to him of deed by original grantor.

2. Deeds ⊛═193—Facts held sufficient to warrant trial judge in presuming execution of deed by original grantor to plaintiff's distant grantor.

Circumstantial evidence *held* to warrant trial judge in presuming execution of deed by original grantor to plaintiff's distant grantor.

3. Deeds ⊛═38(1)—Deed held not void for defects in description of land not apparent on face of instrument.

Uncertainty in description, not apparent on face of deed, but arising from extraneous facts, *held* not patent ambiguity rendering deed void, but a latent ambiguity explainable by extrinsic proof identifying lands conveyed.

4. Deeds ⊛═110—Construction of deed is matter of law for court.

Construction of deed is matter of law for court.

5. Deeds ⊛═38(1)—Deed is void when inaccurate description on its face renders identification of land indeterminable.

Deed is void when inaccurate description on its face renders identification of land indeterminable.

6. Evidence ⊛═452—Extraneous evidence is admissible to explain or remove latent ambiguity in description of land conveyed.

Extraneous evidence is admissible to explain or remove latent ambiguity in description of land conveyed.

7. Deeds ⊛═119—Whether latent ambiguity in description of land renders deed void held mixed question of law and of fact.

Whether a latent ambiguity in description of land intended to be conveyed renders the deed void, where such land can be identified by extraneous evidence, *held* mixed question of law and of fact.

8. Deeds ⊛═118 — Evidence held to support finding that deed intended to convey tract previously reserved by grantor in conveying larger tract to another.

Evidence *held* to support finding that deed intended to convey a certain 100-acre tract reserved by the grantor from another conveyance.

Appeal from District Court, Sabine County; V. H. Stark, Judge.

Trespass to try title by T. B. Hamilton against S. N. Strother. Judgment for plaintiff, and defendant appeals. Affirmed.

Minton & Lewis, of Hemphill, for appellant.

Kennerly, Williams, Lee & Hill, of Houston, for appellee.

HIGHTOWER, C. J. This was an action of trespass to try title brought by the appellee, as plaintiff, against the appellant, as defendant, and involves 44¾ acres of land described by metes and bounds in the plaintiff's petition, and this 44¾-acre tract is part of a certain 100-acre tract, and the 100-acre tract is a part of a 317-acre tract, all being out of the David Huffman league of land in Sabine county. In addition to the formal action of trespass to try title appellee also pleaded title under the 3, 5, and 10 year statutes of limitation. The appellant, as defendant, answered by general denial, the formal plea of not guilty, and in addition pleaded, as a bar to appellee's recovery, the 3, 5, and 10 year statutes of limitation.

The case was tried to the court without a jury, and judgment was rendered in favor of the appellee for recovery of the 44¾ acres of land sued for by him, and it is from this judgment that this appeal is prosecuted.

The David Huffman league of land in Sabine county was granted to David Huffman by the government of Coahuila and Texas on October 21, 1835. As one link in his chain of record title, the appellee had to depend upon circumstantial evidence showing the execution of a deed by the original grantee, David Huffman, to the 317-acre tract above mentioned to one Isham Alford, and, unless the evidence was sufficient to warrant a finding by the trial court that a deed was executed by David Huffman to Alford, or that it was more reasonably probable that such deed was executed than that it was not, then the appellee failed to establish his title to the 44¾ acres in controversy, and judgment in his favor would not be authorized.

The trial court found as one of his fact findings that it was more reasonably probable that the original grantee, Huffman, did execute to Alford a deed conveying the 317-acre tract, as claimed by appellee, than that such deed was not so executed, and therefore held in favor of appellee's contention that such deed was executed by Huffman to Alford. This finding of fact is challenged by appellant on the ground of lack of evidence to support it, and we will dispose of this contention at this point.

[1, 2] The circumstances upon which appellee sought to establish the execution of the deed from Huffman to Alford to the 317-acre tract of land were, substantially, the following:

Appellee proved by one W. W. Horn, who was a witness upon the trial, that he came to Sabine county in 1870, and that he then found one W. W. Allen living upon the 317-acre tract and claiming it as his homestead;

that Allen continued to live upon this 317-acre tract, and claimed it as his homestead until some time during the year 1879, and until he, in August of that year, sold 217 acres of the 317-acre tract to one Samuel N. Strother, and that after that sale Allen no longer lived upon any portion of the 317-acre tract. This witness Horn could not say how long Allen had been in possession of the 317-acre tract at the time witness first found him there, nor was there any other testimony, so far as reflected by this record showing when Allen first took possession of or claimed to own the 317-acre tract. The record shows that on May 24, 1878, Isham Alford and wife executed a substitute deed to Allen, reciting that they had theretofore conveyed the 317-acre tract to Allen by a deed which had been lost or mislaid, and "supposed to have been burned up at the time the courthouse and records of Sabine county were burned in the year A. D. 1875." There was nothing in this substitute deed to indicate the exact date of the prior deed from Alford to Allen, and there is no fact or circumstance in the record which would tend to show even approximately the date of such prior deed. The record shows, however, that the deed records of Sabine county were completely destroyed by fire on November 22, 1875, and, if the prior deed from Alford to Allen had been recorded at that date, its record was destroyed by the fire. There is nothing in this record showing, or tending to show, that David Huffman, the original grantee, or any of his heirs, or any of his or their vendees, ever set up any claim to the 317-acre tract which Alford sold to Allen, or that Huffman or his heirs, or any vendee under them, ever exercised any acts of ownership of any character whatever over this 317-acre tract. In other words, there has been no claim on the part of the original grantee, Huffman, or on the part of any one through or under him to the 317-acre tract, since it was surveyed in 1858 by the then county surveyor of Sabine county. The record does not show for whom, or at whose instance, the survey of the 317-acre tract was made in 1858, but the record does show that the only claim ever made to this 317-acre tract since it was surveyed was made by Alford and Allen and subsequent purchasers from Allen. It was not shown, however, as contended by appellant, that Alford was ever in actual possession of the 317-acre tract, and therefore counsel for appellant contend that the evidence was not sufficient to warrant the presumption of a deed from Huffman to Alford, a necessary link in appellee's chain of title. We do not believe that it was absolutely necessary for the evidence to show that Alford was at some time in actual possession of the land before he conveyed to Allen in order to warrant the presumption of a deed to him from Huffman. We have been cited to no authority holding that such proof was necessary, and have found none. The only activity with reference to this 317-acre tract since its survey in 1858 was shown to be by Alford, and, Allen claiming through him, and in the absence of any evidence showing any assertion of title or acts of ownership by Huffman or his heirs, or others claiming through or under them, we think that after such great length of time the trial court was warranted in finding that it was more reasonably probable that Huffman executed a deed to Alford than that he did not do so. This we understand to be the test. We therefore overrule appellant's assignment attacking that finding of the trial judge. Frugia v. Trueheart, 48 Tex. Civ. App. 513, 106 S. W. 736; Herndon v. Burnett, 21 Tex. Civ. App. 25, 50 S. W. 581; Brewer v. Cochran, 45 Tex. Civ. App. 179, 99 S. W. 1037; Herndon v. Vick, 89 Tex. 475, 35 S. W. 141; Bounds v. Little, 75 Tex. 316, 12 S. W. 1109; Magee v. Paul, 110 Tex. 470, 221 S. W. 254.

The trial court further found that the appellant in this case, Strother, was a naked trespasser, and without title of any character, and there is no question made upon this finding. Appellant offered no evidence whatever to show any character of title claimed by him, and made no attempt to establish a defense of limitation under either of the statutes pleaded.

The next material contention made by appellant is, in substance, that some of the deeds which constitute links in appellee's chain of title from Allen were so defective as to description as to render them absolutely void, and that therefore appellee was not entitled to recover any portion of the land in controversy, but that the judgment should have been that he take nothing by the suit. We shall not go into detail in disposing of this contention, since we are affirming and not reversing the trial court.

The 317-acre tract known as the Allen tract is perfectly described by metes and bounds, and its location upon the ground is not a matter of difficulty, as shown by the undisputed record. On August 22, 1879, Allen and wife executed a deed conveying to S. N. Strother all of the 317-acre tract—

"saving and excepting from said above described three hundred and seventeen acres of land the northeast corner thereof, described as follows, viz.: 'Commencing on the east boundary line of said three hundred and seventeen acre survey at a mulberry about six inches in diameter marked A; thence in a northwesterly direction running line down what is known as the "deep branch," following the channel of said branch to the north boundary line of the David Huffman league; thence with said league line east or in an easterly direction to the northeast corner of said first described survey; thence south or in a southerly direction with the east line of said three hundred and seventeen acre survey to the place of beginning, which said last described tract comprising by estimation about one hundred acres of land is hereby reserved from sale.'"

Thus it appears in this conveyance that Allen conveyed to Strother all of the 317-acre tract lying south of the "Deep branch" (which, as the evidence reflects, is also known as "Waterfall branch"), aggregating 217 acres, and that he expressly reserved title in himself to the remaining 100 acres of the tract, and that this 100 acres lies north of the branch.

There is no question made by counsel for appellant of the sufficiency of the description of the 100 acres of land in the 317-acre tract reserved by Allen at the time he conveyed the 217 acres to Strother, and there is no contention by appellant, and nothing in the record indicating, that Allen at any time owned any land in the Huffman league outside of the 317-acre tract. Consequently, after the execution of his deed to Strother, he owned only the 100 acres, which he reserved in the Strother deed.

Now the record shows that, about seven years after Allen had executed the deed to Strother for the 217 acres, he and his wife, on June 10, 1887, executed a deed to one J. A. Mealer, purporting to convey 100 acres of land by the following description:

"100 acres of land, more or less, out of the northeast corner of the David Huffman league. Beginning about the head of Water Fall branch on the east line of the said David Huffman league for the southeast corner, at which corner a mulberry tree stands and is marked with the letter 'A'; thence with the meanderings of said branch to the north line of said league. Thence east to the northeast corner of said David Huffman league; thence running south on the east line of said league to the place of beginning. This beginning corner having been established by me, the said W. W. Allen, at the time I made a deed to S. N. Strother to another portion of this league."

[3] The description in this deed from Allen and wife to Mealer is attacked as being wholly insufficient to describe any land, and that the deed, for lack of description, is void upon its face; that it describes no land whatever; and that this is apparent from the face of the instrument itself. In other words, it is appellant's contention that the description just quoted in the deed from Allen and wife to Mealer is so ambiguous and lacking in certainty that it constitutes a patent ambiguity upon the face of the deed and therefore the deed is absolutely void, and that all subsequent links in the chain of title from Mealer down to the appellee being in the same condition as to description of the 100 acres which was reserved by Allen when he sold to Strother are also void upon their face, and that no title has ever passed into appellee for any portion of the land in controversy in this suit.

[4-7] We cannot agree with learned counsel for appellant that the deed from Allen and wife to Mealer is void upon its face, for the reason that the description is such that no land could be located under such description. In other words, we hold that the ambiguity, if any, in the description is not a patent ambiguity, but is only a latent one, if any, and that therefore the deed is not void upon its face. Of course, the construction of a deed is a matter of law for the determination of the court, and, where the land intended to be conveyed is so inaccurately described that it appears on inspection of the deed itself that the identity of the land is altogether uncertain and could not be determined, the court would hold the deed void; but, when the uncertainty as to description does not appear upon the face of the deed, but arises from extraneous facts, as in other cases of latent ambiguity, then extraneous evidence is admissible to explain or remove the ambiguity. In such a case the deed could not be properly excluded, but should go in evidence along with extraneous proof, if any, to explain or remove the ambiguity, and, if the land intended to be conveyed can be thus identified, the question has then become a mixed one of law and fact to be determined by the trial court, or jury under its instructions. Giddings v. Day, 84 Tex. 605, 19 S. W. 682; Connally v. Bank (Tex. Civ. App.) 189 S. W. 311; Petty v. Wilkins (Tex Civ. App.) 190 S. W. 531; Lemm v. Miller (Tex. Civ. App.) 245 S. W. 90.

[8] From the record in this case, without going into detail, it is manifest to this court that, when Allen conveyed to Mealer the 100-acre tract which was described in Allen's deed to Strother, he intended to use the same description of the 100 acres conveyed to Mealer that he used in reserving the 100 acres when he conveyed the 217 acres to Strother. In the Mealer deed the call is to begin at the same "mulberry tree." The call is then to go in a northwesterly direction with Water Fall branch until the north boundary line of the David Huffman league is intersected. Then the call is to go east with the David Huffman league. It is manifest from this record that this last call, "east with the David Huffman league," was a mistake, and that Allen intended the call to be "east on the 317-acre tract survey." It is also manifest from the facts and circumstances of this record that the words "to another portion of this said league" were erroneously used by Allen in this Mealer deed, and that he intended to say, instead, "to another portion of this said survey," meaning the 317-acre tract, and it is further apparent and manifest from this record that, instead of saying in this deed to Mealer that the 100 acres is in the northeast corner of the David Huffman league, Allen intended to say that it was in the northeast corner of the 317-acre tract, and it is further clear and manifest from this record that instead of saying, as Allen did in the Mealer deed, that the "mulberry tree" was on the east boundary line of the David Huffman league, he

intended and should have said that it was on the east boundary line of the 317-acre tract. These conclusions on our part cannot be escaped from the record as presented before us. The trial court found as a fact, upon abundantly sufficient facts and circumstances, as disclosed by this record, to show that all the land recovered by the appellee in this case was sufficiently described in the deed from Allen to Mealer, and that it was a part of the 100-acre tract which had been reserved by Allen at the time he conveyed to Strother. It was clearly open to the trial court, under the facts of this case, to make such finding, and, as we think, the evidence compelled such finding. There is no use discussing or even mentioning further conveyances, because it is conceded that, if the description in the deed from Allen to Mealer was sufficient to warrant a recovery by appellee in this case of the land in controversy, then, so far as the question of description is concerned in any of the deeds, title by all subsequent deeds passed into appellee. Therefore, since we are of the opinion that the facts were sufficient to warrant the trial judge in presuming that a deed had been executed by Huffman to Alford, and also that the facts and circumstances in this case were sufficient to support, if they did not compel, a finding that the description of the 100-acre tract as contained in the deed from Allen to Mealer was sufficient to pass the title to that tract to Mealer, and that mesne conveyances put the title in appellee, it follows that the judgment should be affirmed, and it has been so ordered.