**TEXAS CO. v. VAN DEVENTER et al.***
(No. 1416.)

(Court of Civil Appeals of Texas. Beaumont. Dec. 24, 1926. Rehearing Denied Jan. 5, 1927.)

**1. Boundaries ⬯24—Boundary of oil company's land held to be line to which remote grantor owned, which was named in deed under which oil company holds.**

North boundary of land claimed by oil company *held* to be line to which remote grantor owned, which was named as boundary in deed under which oil company holds, regardless of line as stated in deeds between remote grantors.

**2. Boundaries ⬯24—Boundary conveyed by sheriff's deed held same as in subsequent reconveyance of same tract to grantee therein as trustee.**

Boundary of land conveyed by sheriff's deed *held* to be same as in subsequent reconveyance of same tract to grantee in sheriff's deed as trustee, from brother to whom he had conveyed after receiving land under sheriff's deed.

**3. Boundaries ⬯10—Evidence ⬯390(3)— Survey of land must be located by calls of its own field notes, which may not be varied by extraneous evidence.**

Survey of land must be located by calls of its own field notes, which may not be varied by extraneous evidence.

**4. Evidence ⬯460(6)—Field notes to sheriff's deed held ambiguous, allowing introduction of evidence to vary calls.**

Field notes to sheriff's deed *held* ambiguous, allowing introduction of evidence to vary calls, where all parties agreed that call therein as read would force incorrect construction, and description contained phrase which had no meaning and stated impossible acreage.

**5. Appeal and error ⬯1008(1)—Defendant held bound by court's finding locating boundary conveyed by sheriff's deed, where field notes were ambiguous.**

Location of boundary conveyed by sheriff's deed, field notes of which were ambiguous, being issue of fact, defendant was bound by court's findings against it.

**6. Boundaries ⬯47(1)—Oil company held estopped to deny location of boundary in ambiguous deed as determined by parties in its chain of title.**

Oil company *held* estopped to deny location of boundary, description of which was ambiguous, in deed to remote grantor, as determined by grantee in such deed and succeeding parties in chain of title, and cannot invoke doctrine of estoppel as against owners in its chain of title on theory that they were bound by another construction of ambiguous deed.

**7. Boundaries ⬯30—Parties owning separate interests in land held properly joined as plaintiffs in suit to determine boundary.**

Parties owning separate interests in land *held* properly joined as plaintiffs in suit against oil company to determine boundary, where they all claimed same boundary as against defendant's contention, were all interested in correct location thereof, and correct location was dependent on same evidence as to all parties.

**8. Trespass to try title ⬯28—Warrantors of title may come in or be brought in as proper parties to defend it when warranties are sued.**

Warrantors of title to either real or personal property may, when their warranties are sued for such property, either make themselves or be made parties to defend title which they have warranted.

**9. Action ⬯50(1)—Joinder of parties and causes of action is largely within court's discretion.**

Joinder of parties and causes of action is question resting largely in discretion of court.

**10. Boundaries ⬯30—Where disclaimer is filed and issue reduced to one of boundary, and parties on each side have common interest as against adverse parties, there is no misjoinder.**

Where disclaimer is filed and issue is reduced to one of boundary, and there is common interest as between all parties on one side as against parties adversely interested, there is no misjoinder of parties and causes of action.

Appeal from District Court, Liberty County; Thos. B. Coe, Judge.

Suit by Mrs. Martha Van Deventer and others against the Texas Company. Judgment for plaintiffs, and defendant appeals. Affirmed.

J. A. McNair and Baker, Botts, Parker & Garwood, all of Houston, for appellant.

E. B. Pickett, Jr., C. H. Cain and Llewellyn & Kayser, all of Liberty, Kennerly, Williams, Lee & Hill, P. O. Settle, and John E. Green, Jr., all of Houston, and H. O. Head, of Sherman, for appellees.

WALKER, J. The deed records of Liberty county were destroyed by fire on the 12th day of December, 1874. June 3, 1845, B. W. Hardin, sheriff of Liberty county, by virtue of an execution under a judgment against the heirs of Wilson Webb, sold to John W. Clayton the following described tract of land in Liberty county, Tex., to wit:

"Three hundred acres of land lying and being situated as follows, beginning at the lower line of the third of a league of David Minchey headright sold to James Martin, deed, on the river,

thence up the river with its meanders four hundred and sixteen 6/10 varas, being one-half the square of this survey, thence from the river parallel with the line of said third a sufficient distance so that a line running to intersect the lower line and thence to' the beginning corner, will embrace three hundred acres of land with all its appurtenances and all the estate which the said heirs of Wilson Webb had in the said tract or parcel of land' on the said fourth of June in the year 1845, ŏr at any time since or now hath with the appurtenances."

John W. Clayton's wife was named Martha, one of· the daughters of Wilson ·Webb, who died before this execution sale, leaving this land to his heirs. There is no deed of record in the deed records of Liberty county out of John W. Clayton and wife, Martha, but recitations in subsequent deeds show that prior to September 30, 1851, John W. Clayton conveyed to H. R. Clayton a tract of land in the David Minchey league bounded on the west by the Trinity river, on the south by the James M. and Kesiah Clayton lands, on the east by the Meadow tract, and on the north by the William A. Smith tract of land, which, on this trial, was claimed to be the O. A. Schade tract, as delineated on the plat hereinafter given.

On September 30, 1851, H. R. Clayton reconveyed to John W. Clayton and George Preacher, to hold in trust during the natural life of John W. Clayton for the use and benefit of Martha Clayton and her children, or such of them as survived them, the following described tract of land in the said David Minchey league:

"One tract or parcel of land containing three hundred acres, being a part and parcel taken and surveyed of the league of land known as the Mincheu league or league of land granted to David Mincheau as his headright which said tract or parcel of land is bounded on the west by Trinity river, on the south by lands now belonging to the estate of James M. Clayton and Keziah Clayton, on the east by land now claimed and owned by —— Meadow; on the north by a strip of land owned by William A. Smith, purchased by him from Jackson H. Griffin, all of which said land boundary is of the said Mincheau league and further and better known as the land whereon John W. Clayton now resides." "Said property was purchased by me originally from John W. Clayton."

Martha and John W. Clayton died, leaving four children. One daughter sold her one-fourth interest in the 300 acres to Frederick Antoine by conveying him under specific metes and bounds 75 acres out of the southwest corner of the Wilson Webb-John W. Clayton tract as above described. Though there was a controversy in the lower court as to the location of the north boundary line of this tract, appellant has acquiesced in the location as made by the trial court. The daughter Martha and her husband, Quitman Van Deventer, acquired the interests of the other two children, thereby owning the re-

290 S.W.—36

maining three-fourths interest in this tract of land.

November 3, 1916, the Van Deventers sold 80 acres off the west end of their 225-acre tract, being all of the Wilson Webb-John W. Clayton tract except the 75 acres sold to Antoine, to the T. A. R. Oil Company, under the following description:

"In the David Minchey league situated on the east side of the Trinity river in Liberty county, Tex., and being the west eighty acres of what is known as the Van Deventer 225 acres tract in said league, said 80 acres being the 80 acres next to and east of said river and bounded on the west by said river, on the north by the north line of the Van Deventer 225 acres tract, which is also the south line of the O. A. Schade 218½ acre tract, on the south by the south line of said Van Deventer tract, which is also the north line of the Antoine 75 acre tract, and on the east by a line parallel with the east line of said 225 acre tract and so located as to cut off the 80 acres in question from the west end of said 225 acre tract being the same tract of land heretofore occupied by Mrs. Martha Van Deventer as a homestead and being the only tract of land owned or claimed by her in said David Minchey league."

This suit was by appellees, who claimed to own all of the Wilson Webb-John W. Clayton tract, except the Antoine and T. A. R. Oil Company tracts against appellant, the Texas Company, who own the T. A. R. Oil Company tract under a record chain of title from and under the T. A. R. Oil Company.

Appellant disclaimed as to all the land in controversy, except the T. A. R. Oil Company tract, which it claimed under the following plea:

"And for further answer herein, if answer be necessary, this defendant disclaims all right, title, and interest in and to the tract of land described in plaintiffs' petition, save and except such part thereof as is included within the boundaries and description of the 80 acres of land which was conveyed by the plaintiffs Mrs. Martha Van Deventer, Mrs. Nena Mehavier, Charles Mehavier and L. Q. Van Deventer, to the T. A. R. Oil Company by general warranty deed dated November 3, 1916, which is of record in Book 51, p. 417, deed records of Liberty county, Tex., which 80 acres is the west 80 acres of the Van Deventer 225-acre tract out of the J. W. Clayton 300-acre tract in the David Minchey league, Liberty county, Tex., and which 80 acres is now owned by defendant under mesne conveyances from the said T. A. R. Oil Company."

.No field notes to the Wilson Webb tract were offered in evidence, but its southwest corner, south boundary line, southeast corner, east boundary line, northeast corner, and the Trinity river as its west boundary line, were shown beyond controversy, leaving the issue only as to its northwest corner and its north boundary line from the uncertain northwest corner to the recognized northeast corner. The following plat shows the contentions of the parties:

(Continued on following page)

Appellant insists that all parties must claim under the deed from B. W. Hardin, sheriff, to John W. Clayton, which will be referred to hereinafter as the "sheriff deed," and would fix the north boundary line of the land conveyed thereby as being the line A–D, as shown on the plat. Appellees would fix the north boundary line of the Wilson Webb-John W. Clayton tract with reference to the calls in the deed to John W. Clayton as trustee, hereinafter referred to as "trustee deed," as being the line A–E. Under appellant's contention, its east boundary line would be the line O–N, as shown on the plat, for, under its contention, its east boundary line would have to be the line O–N to have its 80 acres to which it is admittedly entitled. Under appellees' contention, its east boundary line would be P–Q, for, placing the north boundary line of the Wilson Webb-John W. Clayton tract at the line A–E, appellant would be getting its 80 acres by making the line P–Q its east boundary line. The small strip in controversy now has on it several producing oil wells. Hence this lawsuit.

On a trial to the court without a jury, and without conclusions of law and fact, which were not requested, the trial court fixed the lines in controversy as contended for by appellees. It thus appears that this suit involves only the issue of boundary.

#### Opinion.

[1] The following conclusions support the trial court's judgment:

First. The "strip of land owned by William A. Smith, purchased by him from Jackson H. Griffin," referred to in the trustee deed, is the same as the O. A. Schade tract shown on the plat, supra, and referred to in the deed from the Van Deventers to the T. A. R. Oil Company, under which appellant holds. No chain of title was introduced in evidence from Jackson Griffin through William A. Smith to O. A. Schade, but the fact that the records were burned is a circumstance to be considered in connection with that issue. The following additional circumstances support this conclusion:

This record shows that the O. A. Schade tract was formerly the Wm. A. Smith tract of land. The Griffins first conveyed a tract of land in the southwest corner of the north one-third to Wilson Webb. They next conveyed a 150-acre tract immediately east of the Webb tract to A. B. Jones, now known as the Meadow or Tevis tract. The Griffins next conveyed a 100-acre tract immediately north of the Tevis tract to Jerome De Blanc. This left a tract of land in the northwest corner of the one-third north of the Webb tract and east of the De Blanc tract. The Griffins conveyed the tract in the northwest corner of the north one-third to Wm. A. Smith, because it is recited in the deed from H. R. Clayton to John W. Clayton et al. that the Webb tract of land was "bounded on the north by a strip of land owned by Wm. A. Smith, purchased by him from Jackson H. Griffin." There is only one subdivision in the Minchey league north of the Webb tract, or the tract of land described in the trustees' deed. It contains approximately 255 acres of land. Wm. A. Smith rendered for taxes 255 acres of land in the David Minchey league for the years 1852 and 1853. The Wm. A. Smith tract was later known as the Dan Clayton tract of land. The title to this tract of land later passed into O. A. Schade in November, 1897. It is at least more reasonable to presume than not that the Schade tract of land in the Minchey league was formerly the Wm. A. Smith tract. Herndon v. Burnett, 21 Tex. Civ. App. 25, 50 S. W. 581; Bounds v. Little, 75 Tex. 316, 12 S. W. 1109; Strother v. Hamilton (Tex. Civ. App.) 268 S. W. 529.

Second. The south boundary line of the Smith-Schade tract is the line A–E as shown on the above plat. The following facts support this conclusion:

There is only one line leading west from the southeast corner of the O. A. Schade tract identified by the two sweet gum trees, and designated by the letter A on the above plat. This line is 74 or 75 years old, and its course from that point is north 86 degrees, 39 minutes west. All of the existing deeds to what is designated as the Schade tract call for its south boundary line from its southeast corner to be on a course north 86 degrees 45 minutes west, and all the surveyors testified that the difference of 6 minutes in a line is wholly immaterial. The undisputed evidence shows that the marked line has always been recognized as the dividing line between the Schade and Wilson Webb or Martha Van Deventer tract. D. B. Tevis testified that he had known these two tracts of land for the last 60 years, and that 25 or 30 years ago he saw the old marked line dividing the Schade and Van Deventer tracts, and that recently he helped Compton run the line; that Quitman Van Deventer himself showed the witness that line in 1893. "There is a line runs through there they call and recognize as the dividing line between the Dan Clayton and John Clayton tracts. It runs through that field. I was told that by Mr. Van Deventer, Mr. Steusoff, and several others, and by the negroes that farmed that." The Van Deventers always claimed the south boundary line of the Schade as their north boundary. L. Q. Van Deventer testified that he knew the location of the south boundary line of the Schade tract and the north line of the Van Deventer tract, and that "our north line upon the ground with reference to the south line of the Schade tract is the same line." "I know there was old landmarks on trees along the line which I say is the south line of the Schade and the north line of my mother, my sister, and my tract.

That is the line we have been claiming to as the common line; that is, that is the line we run our fence to." Mrs. Martha Van Deventer testified:

"I know whose tract of land was to the north and adjoining me on the north. It was the Schade tract. As I said, I claimed up to the Schade line on the north. Before the tract on the north was known as the Schade tract it was known as the Dan Clayton tract. I must be crazy if I don't know that. Dan Clayton did live on his tract of land."

O. A. Schade testified that there was a common dividing line between his tract on the north and the Van Deventer or Clayton tract on the south; that he and Van Deventer had a discussion about that line. "As I stated, Van Deventer was claiming the land immediately on the south of me, south of my south line, it being the tract adjoining me on the south, and he was claiming that before I bought and at the time I bought."

If the old marked line north 86 degrees 39 minutes west from the sweet gum corner is the south boundary line of the Schade tract, then the Schade tract has it approximate acreage, the Webb 300-acre tract has 276.7 acres; but if the line is located as claimed by the appellant, then the Schade 255-acre tract contains 271 acres, and the Wilson Webb 300-acre tract contains only 262.6 acres.

Third. The south boundary line of the Smith-Schade tract was the north boundary line of the Wilson Webb-John W. Clayton tract. This was shown by recitations in deeds, by common repute in the neighborhood, and by the testimony of owners of both the Schade and the Webb tract. In support of this conclusion we refer to the facts given under the first and second conclusions, supra.

Fourth. Wilson Webb died holding the title to his 300 acres. Through his daughter, Martha Clayton, this title was vested in the Van Deventers, who therefore, at the time they executed the conveyance to the T. A. R. Oil Company, owned under Martha Van Deventer to the line A–E, even if it be conceded that both the sheriff deed and the trustee deed conveyed only to the line A–D, as claimed by appellant. Owing to the line A–E, and conveying to that line in their T. A. R. Oil Company deed, appellant, who holds under that deed, must go to the line A–E in fixing the north boundary line of its 80 acres.

The case might well rest on the foregoing conclusions, but since appellant has rested its appeal upon the proper construction of the sheriff deed, we will expressly dispose of its contentions.

[2] Fifth. Appellant advances the proposition that:

"The John W. Clayton 300-acre tract, of which the Van Deventer 225-acre tract is a part, is the same land conveyed to John W. Clayton by B. W. Hardin, sheriff, on June 3, 1845."

We concede this proposition, but in so doing further find that the John W. Clayton tract, as reconveyed to him as trustee, was bounded on the north by the line A–E, and was identical in its boundaries with the Wilson Webb tract. By this conclusion, we fix the line A–E as the north boundary line of the land conveyed under the sheriff deed as against appellant's construction placing it at the line A–D, as shown on the above plat.

[3] In construing the field notes in the sheriff deed, appellant invokes the following proposition, which is unquestionably sound:

"It is a familiar rule that a survey of land must be located by the calls on its own field notes. If when applied to the ground, in the light of all the existing and attending circumstances, the field notes are certain and unambiguous, then the calls speak for themselves. To permit the introduction of evidence to vary any of the calls would be to violate the universal rule that extraneous evidence is not admissible to vary a written instrument."

[4] Applying that proposition to the sheriff deed, appellant says:

"We think there can be no doubt that the description in the deed by Hardin, sheriff, to John W. Clayton, in the light of the knowledge of the parties and the facts as they existed at the time, was definite and unambiguous, and there was no uncertainty about the particular tract of land intended to be conveyed."

In this proposition appellant is in error. The field notes to the sheriff deed are so ambiguous that an application on the ground can be given to them only by resorting to almost all the rules of construction evolved by the courts to save ambiguous deeds from being void. This is apparent from the most casual inspection of the field notes given in the sheriff deed. It says:

"Beginning at the lower line of the third of a league of David Minchey headright sold to James Martin deed, on the river, thence up the river with its meanders four hundred and sixteen 6/10 varas."

As read, it would seem that this call would force appellant to meander the river 416⅗ varas for the northwest corner. But all parties agree that that is not the proper construction, for when applied to the claims of the parties it would convey only a small part of the Wilson Webb-John W. Clayton tract, and would not extend as far north even as the north boundary line of the Antoine tract. Appellant construes this language as requiring a line to run north at right angles with the south boundary line; but clearly such a construction is not the line of the deed.

Again, the description continues: "Being one-half the square of this survey." This language has no meaning, and, as we understand the testimony, was given no meaning

when applied to the facts of this case. Appellant seeks by an extended analysis to read into this description the statutory law as it existed at that time, but we are unable to follow it as applied to the facts of this case. It is our conclusion that the language just quoted affords no help to the court in construing the field notes in this deed. Continuing:

"Thence from the river parallel with the line of said third a sufficient distance so that a line running to intersect the lower line and thence to the beginning corner, will embrace three hundred acres of land."

Even if appellant's construction of the first call is adopted and the northwest corner fixed as claimed by it, the survey will not contain 300 acres. At no point can a northwest corner be fixed for the sheriff deed whereby it can be made to convey 300 acres of land, for the simple reason that in extending east the surveyor seeking to apply this call to the facts as they exist on the ground would run into the land of other parties before his complement of acres could be obtained. It would appear from an examination of the record that the witnesses in this case placed four different constructions upon the sheriff deed, illustrating its ambiguity, as follows:

"(1) That it means to meander the river 416.6 varas, then draw a line parallel with its south boundary far enough to include 300 acres. This is rejected by all parties, because 300 acres of land in that shape would conflict with all of the surveys on the east, and the Texas Company 80 acres either would not be included, or, if so, it would conflict with the Antoine tract. The north boundary line of the tract so located would be south of the present location of the Texas Company 80-acre tract under any theory.

"(2) That the first part of the first call taken in connection with the second half 'being one-half the square of this survey,' means a 300-acre survey 416 varas wide. 416 varas is one-half of the square of a 110-acre tract. It is not one-half the square of a 300-acre tract. Such construction would cause the second part of the first call to conflict with the first part of the same call as well as the call for quantity, and the 300-acre tract so located would conflict with the surveys on the east. This is the most ambiguous construction of all.

"(3) That the words, 'being one-half the square of this survey,' mean one-half the square of a 300-acre tract, which would give it a width of 650 varas on the river. This construction would give the tract of land described in the sheriff's deed its acreage, but it would conflict with the Schade tract on the north, and the east boundary line of the Texas Company 80 acres would be located farther west than appellees contend. Under such a theory the sheriff's deed would describe more land than was described in the deed to Wilson Webb.

"(4) That B. W. Hardin attempted to convey all of the Wilson Webb tract whose north and south boundary lines probably appeared parallel to the sheriff, because they lacked only one degree being parallel lines. In view of the action of John W. Clayton and wife, Martha J. Clayton, née Webb, and those holding under them for the last 80 years or more, and the inactivity of the other Webb heirs, if any, and the fact that such survey would not conflict with any of the other surveys and would more nearly have its stated acreage than the locations claimed by the appellant, this is the most reasonable construction of all."

[5] Construing the sheriff deed in the light of all attending circumstances, it seems to us that the intent on the part of the sheriff to convey all of the Wilson Webb tract clearly appears. The Wilson Webb tract was reputed to contain 300 acres. The sheriff purports to sell 300 acres. Had he intended to sell less than the 300 acres, it would have been his duty to say so. Agreeing with all parties that the call for the meanders, of the river 416$\frac{6}{10}$ varas is ambiguous, to carry the sheriff deed to the Smith-Schade line does violence to only one call in the deed, that for the north boundary line to be parallel with the south boundary line, while to give effect to that call does violence to almost every other call in the deed. If the proper construction of this deed, as a matter of law, does not carry it to the Smith-Schade line, then clearly it was an issue of fact, which the court resolved against appellant, and by which it is bound.

[6] Sixth. It also follows that though appellant be correct in fixing the north boundary line of the sheriff deed at the line A–D, the trial court's judgment must be affirmed. It seems to us that appellant cannot escape the proposition that the proper location of the north boundary line of the sheriff tract was ambiguous. With this deed before him, Henry B. Clayton, in conveying the land back to his brother, John W., and to George Preacher, as trustees, resolved the ambiguity against appellant by the call for the William A. Smith tract. As John W. Clayton was a party to that deed, he was estopped by this call to deny that the north boundary line extended to the Smith south boundary line. Also, as the beneficiaries under the trustee deed have appropriated the trust they are estopped to deny that it extended to the Smith south boundary line. As appellant holds under the trustee deed, it is also estopped, as are all the other parties to this litigation holding under this chain of title, to deny the effect of this call.

In Parker v. Campbell, 21 Tex. 763, it was said:

"There is no better settled doctrine than that, where a party has solemnly admitted a fact by deed and under his hand and seal, he is estopped, not only from denying the deed itself, but every fact which it recites."

See, also, Wallace v. Pruitt, 1 Tex. Civ. App. 231, 20 S. W. 728; Corzine v. Williams,

85 Tex. 499, 22 S. W. 399; Hardy v. De Leon, 5 Tex. 211.

But appellant objected to the introduction of the trustee deed, thereby seeking to trace its title through the sheriff deed and from there under John W. Clayton without reference to the deed he made to his brother and the reconveyance to him as trustee. The record clearly showing, if not as a matter of law then as an issue of fact, that John W. Clayton sold this land to his brother, and that he afterwards reconveyed it, this trustee deed became a link in appellant's chain of title through which it must hold. Appellant not only enjoys the benefits of this deed, but must also carry its burdens, which are that appellant holds directly under the beneficiaries and not under John W. Clayton, and that the north boundary line of the Clayton tract was fixed by all the interested parties as being the line A–E. But appellant says as against the application we have made of the doctrine of estoppel that the appellees have estopped themselves to deny that the line A–D is the north boundary line of the Clayton tract. Of course, this proposition assumes that the proper construction of the sheriff deed fixes the line A–D as its north boundary line. So, assuming that is the proper construction of the sheriff deed, and granting that the trustee deed extends to the line A–E, and that appellees may hold to that line as heirs of Wilson Webb, they say by the doctrine of estoppel that appellees cannot extend the 80 acres beyond the line A–D. We give their exact proposition:

. "Appellant further contends that if it were possible to conceive that the deed by H. R. Clayton conveyed other land than was conveyed by the sheriff's deed (which is not at all admitted), then appellees are now estopped to assert that they are claiming other than under the deed by Hardin to John W. Clayton."

Under this proposition appellant shows many conveyances made by appellees, describing their interest in the land as being that which was conveyed "to John W. Clayton by B. W. Hardin, sheriff, by deed dated June 3, 1845," and other references to the Hardin-Clayton deed. Appellant cannot invoke the doctrine of estoppel. The chain of title under which appellant holds was of record. It appeared from this chain of title that not only was the sheriff deed frequently called for, but also the south boundary line of the Smith tract. With this title before him, the record before us shows that the attorney for the T. A. R. Oil Company, whom this court recognizes as one of the ablest land lawyers in Texas, prepared the deed for his client, and removed all ambiguity from his deed by calling for an old, marked and well-recorded line; that is, by calling for the "south line of the O. A. Schade 218½-acre tract." In the light of the facts as shown in the record, and as reflected by this opinion, no question can

arise that it was the intent of the parties to that deed to make the line A–E, which is the south line of the Schade tract, the north boundary line of the 80 acres conveyed. Appellant also had all these facts before it, and voluntarily accepted a conveyance under which all interested parties had fixed the line A–E as the line of its 80 acres. It is appellant, and not appellees, who, in the light of all the evidence and the construction placed thereon by the parties, is estopped to repudiate the construction placed thereon, and the judgment of the court correctly fixed the boundary lines of the 80 acres according to the contention of appellees.

[7] Seventh. Appellant complains that the court erred in overruling its plea of misjoinder of parties, which was as follows:

"In the above entitled and numbered cause comes now the defendant, the Texas Company, and moves the court to abate this cause and dismiss it from the docket of this court because of a misjoinder of parties plaintiffs and causes of action, in this: .

"Defendant says that plaintiffs cannot maintain this cause of action, because they are not tenants in common of the land described in their petition, but that each of said plaintiffs claim a separate and segregated part and interest in said tract of land as follows: The plaintiff Higgins Oil & Fuel Company has no right, title, or interest in said tract of land except as to a specific 25-acre tract, which said 25 acres was conveyed by the plaintiffs Mrs. Martha Van Deventer, Mrs. Nena Mehavier, joined by her husband, Charles Mehavier, and L. Q. Van Deventer to the said Higgins Oil & Fuel Company by deed dated March 31, 1922, which is of record in Book 113, p. 43, of the deed records of Liberty county, Tex.; that the said Higgins Oil & Fuel Company has no interest whatever in any other part of said tract of land described in plaintiffs' petition; that the plaintiffs, Martha Van Deventer, Mrs. Nena Mehavier, Charles Mehavier, and L. Q. Van Deventer, have no right, title, or interest whatever in and to the above-described 25-acre tract of land—wherefore, defendant says that plaintiffs have been improperly joined in this proceeding for the reason that if any cause of action they have, or either of them have, said causes of action are several and peculiar to each of said plaintiffs, and defendant offers to make proof of this fact and prays in limine that this cause be abated and proceed no further."

The facts under this plea are, substantially, as follows:

The appellees, Mrs. Martha Van Deventer, Nena Mahavier, Charles Mehavier, and L. Q. Van Deventer, on January 19, 1920, were the owners of all the Martha Van Deventer 225 acres of land, except the Texas Company 80-acre tract. This is the same tract of land described in the plaintiffs' petition. On that date Mrs. Martha Van Deventer, Nena Mehavier, and Charles Mehavier executed an oil and gas lease to the Gulf Production Company, covering all their interest in a tract of 145 acres of land, more or less, in the David

Minchey league. On March 13, 1922, the appellees, Mrs. Martha Van Deventer, Nena Mehavier, Charles Mehavier, and L. Q. Van Deventer conveyed by general warranty deed to the Higgins Oil & Fuel Company in fee a certain 25 acres of land in the said 145 acres of land, more or less, subject only to the Gulf Production Company's oil and gas lease. On these facts the trial court correctly denied appellant's plea of misjoinder.

[8] In United States Fidelity & Guaranty Co. v. Fossati, 97 Tex. 497, 80 S. W. 74, it was held:

"It has long been the law that warrantors of the title to either real or personal property may, when their warranties are sued for such property, either make themselves or be made parties, in order to defend the title which they have warranted."

[9] The rule forbidding misjoinder of parties and causes of action is a rule of convenience and expediency. This doctrine rests on the consideration that such procedure will consume too much time, confuse the jury, and hinder instead of promote the proper administration of the law. Buckholts State Bank v. Thallman (Tex. Civ. App.) 196 S. W. 687. Within the limits of this rule, the joinder of parties and causes of action is a question resting largely in the discretion of the court. Wolff v. Cohen (Tex. Civ. App.) 281 S. W. 648; Atkinson v. Jackson (Tex. Civ. App.) 259 S. W. 280; Barton v. Bank (Tex. Com. App.) 276 S. W. 177; Hammer v. Woods, 6 Tex. Civ. App. 179, 24 S. W. 942.

In the present case, each of the appellees contends that the east boundary line of the Texas Company 80-acre tract is located on the ground as found by the trial court. The proper location of that line was the sole issue in dispute. What was the necessity for each of the appellees to bring a separate suit against the Texas Company to establish that line? The same character of evidence would be required in each case. All the appellees were interested in the location of that line as against the Texas Company. Therefore they are all proper parties plaintiff in this suit against the Texas Company. since the location of that line settles the dispute as between them and appellant. Kunz v. Ragsdale (Tex. Civ. App.) 200 S. W. 269; Cox v. Sinclair Gulf Oil Co. (Tex. Civ. App.) 265 S. W. 196; Edinburg Irr. Co. v. Ledbetter (Tex. Civ. App.) 247 S. W. 335.

Again, appellant is claiming a strip of land which conflicted with land belonging to the Higgins Oil & Fuel Company, and a tract belonging to Mrs. Martha Van Deventer and children, on all of which the Gulf Production Company holds a lease. The Texas Company cannot recover this strip of land from Mrs. Van Deventer and children unless they are parties to the suit. The Van Deventers were not only proper, but necessary, parties. De La Vega v. League, 64 Tex. 212.

Again, the vital issue in this case is the correct location of the east boundary line of the Texas Company 80-acre tract. All the appellees are interested in maintaining the correct location of that boundary, because otherwise the Texas Company would recover land in which each of them has an interest. Since the only issue involved is one of boundary, the correct location of which is dependent upon the same evidence, there was no misjoinder of parties and causes of action. Whitaker v. Browning (Tex. Civ. App.) 155 S. W. 1197; Muncy v. Mattfield (Tex. Civ. App.) 40 S. W. 345; Yellow Pine Lumber Co. v. Carroll, 76 Tex. 135, 13 S. W. 261.

[10] Again, where disclaimer is filed and the issue is reduced to one of boundary and there is a common interest as between all the parties on one side as against the parties adversely interested, there is no misjoinder of parties and causes of action. In this case the Texas Company filed a disclaimer, reducing the issue to one of boundary. It did not require different evidence by any of the plaintiffs to sustain their location. This proposition that the plea of misjoinder was properly overruled is clearly sustained by Whitaker v. Browning, supra, Muncy v. Mattfield, supra, and Yellow Pine Lumber Co. v. Carroll, supra.

It follows that the judgment of the trial court must be in all things affirmed.