## BEAUMONT, SOUR LAKE & WESTERN R. CO. v. CLUCK et al.

### No. 2958.

Court of Civil Appeals of Texas. Beaumont.

June 17, 1936.

Rehearing Denied July 1, 1936.

Butler & Pipkin and W. G. Reeves, all of Beaumont, and Andrews, Kelley, Kurth & Campbell, of Houston, for appellant.

J. L. C. McFaddin, of Beaumont, for appellees.

**WALKER, Chief Justice.**

On the 4th day of September, 1931, Otis Richmond drove his automobile into a flatcar in one of the freight trains of appellant, Beaumont, Sour Lake & Western Railroad Company, as it stood across the Nome-Sour Lake highway, where this highway crosses appellant's railroad track in the town of Grayburg about one mile from Sour Lake. Richmond brought suit against appellant for the damages suffered by him in the collision, and recovered judgment in the district court, which was affirmed upon appeal to this court, and the petition for writ of error to the Supreme Court was dismissed for want of jurisdiction; for our opinion, see Beaumont, S. L. & W. R. Co. v. Richmond, 78 S.W.(2d) 232. Appellees, Bryan Cluck and C. W. Hillyer, were Richmond's guests in his car at the time of the collision, asleep on the back seat, and this suit was brought by them against appellant for the damages suffered by them in the collision.

The pleadings of all parties in this case were, in substance, copies of the pleadings in the Richmond Case, and on the issues of appellant's negligence the evidence was the same on all material points in this case as in the Richmond Case. For that reason, we adopt in every particular the statement of the pleadings and the evidence made by us in the Richmond Case as a part of our statement in this case, with the explanation that the switch light referred to in the statement in the Richmond Case was on the side of the train next to Richmond's car. We supplement the statement in the Richmond Case with the following additional statement: (1) Very few cars used this railroad crossing from 1 o'clock a. m. to 3 o'clock a. m.; at the time of the collision, there was no car approaching this crossing from Sour Lake. (2) At the time of the collision, the train had been stopped across the crossing for about five minutes, blocking the crossing from side to side with a flatcar about forty feet long and with a platform about eight inches thick. (3) The crossing was not lighted, but on the side of the crossing next to Richmond's car was a lighted switch light, and on the other side of the flatcar was a railroad crossing sign, which could be seen across and above the top of the flatcar. The lights in the town of Sour Lake could be seen across and above the top of the flatcar by one driving from Nome, as was Mr. Richmond just prior to the colli-

sion. (4) The witness Harris testified: "Due to the height of the platform of a flat car being about the same height as a, person's eyes seated in an automobile approaching this crossing from the south, a person so approaching can see the lights at Sour Lake over a flat car standing on this crossing; * * * that he saw lights in the south and west edges of Sour Lake that night—quite a number of scattered lights—scattered over one-half mile to a mile from the crossing; that it was a dark night." (5) Again quoting the witness Harris: "When a flat car is standing across the highway, the lights of an approaching automobile from the south would shine over and under the eight inch platform of the flat car, causing it to seem as if there was a line across the windshield of the automobile, making it hard to see a flat car standing on the crossing at night when approaching from either direction on the highway." (6) The witness Harris testified further, summary from appellees' brief:

"He was standing beside the railroad depot at Grayburg, between one and two o'clock in the morning, the train had stopped to take water and was across the Nome-Sour Lake Highway, obstructing the highway; the engine had stopped at the water tank east of the highway and the caboose about a half mile west of the highway; he saw the automobile run into the side of the train upon the south side at the intersection of the railroad and the highway, the train had stood there approximately five minutes before the collision occurred; he ran to the automobile, the train just started to pull out, * * * the train had just started to move and the automobile was being bumped or dragged along in the same direction the train was going; * * * that the freight train was stationary there at the time of the collision and he saw none of the train crew at the place of the collision when he first got there; * * * there were no train men at the crossing at the time of the collision; that the first time he saw the automobile was when it was about 150 feet south from the crossing, headed north toward the freight train, and he saw it strike the train; 'the driver of the automobile put on his brakes and turned the automobile slightly to his left just before striking the train'; a few seconds after the collision, the train started up and pulled on past the automobile

and depot before it was stopped; that he heard the starting whistle at about the time of the collision * * * the automobile struck the train at the west edge of the highway, * * * there was an oil tank on the east end of the flat car, in front of the flat car, which oil tank was of dark color; that the flat car was about forty feet long, the platform was about five feet from the ground, and 'the platform of the flat car was about eight inches thick.' "

(7) We take the following statement from appellant's brief:

"There were no cars approaching from Sour Lake at the time of the accident. There were only patches of fog here and there. * * * There was no testimony that there was any fog sufficient to obstruct the view to any extent whatever, and the witness had no trouble in observing the accident from one block away.

"The witness Harris testified * * * that a flat car is hard to see on a crossing at night. * * *

"The witness H. G. Abbey for the plaintiff testified that it would be a little more difficult to see a flat car than a box car, and further that there was a crossing sign on the north side of the track and it could be seen over the flat car, and that the lights of Sour Lake (a mile away) could be seen over the flat car, and further that the crossing would appear unobstructed with a flat car.

"The driver of the car, Otis Richmond, testified that there was a little mist on the highway, but there was no mist on his windshield after he crossed the spur track some 220 feet short of the crossing; that there was fog on the right side of the windshield where there was no wiper; that as he approached the crossing the fog cleared out; that the windshield was clear where he had the windshield wiper; that he did not see the train until he was ten feet away from it; that he was familiar with the crossing; that he struck the wheels of a flat car; * * * the driver, Otis Richmond, offered no explanation for his failure to see the car on the crossing except the simple statement that the crossing appeared like it was unobstructed."

(8) On the issue of appellant's negligence, we make a part of this opinion all quotations from the testimony made by us in our opinion in the Richmond Case, together with our statement explaining and illustrating the situation of the train, of the Richmond car and its occupants, and the general description of the territory surrounding the crossing; (9) questions Nos. 11, 12, 13, and 14 in our opinion in the Richmond Case were submitted in substance in this case under Nos. 9, 10, 11, and 12, respectively, and answered in this case as in the Richmond Case.

The following issues were submitted to the jury in this case on the measure of appellees' damages, answered as indicated:

"Special Issue No. 24: What sum of money, if paid now, do you find from a preponderance of the evidence would reasonably compensate the plaintiff, Bryan Cluck, for the injuries, if any, sustained by him as a direct and proximate result of the collision in question?

"Answer by stating the amount in dollars and cents," to which the jury answered, "$1,000.00."

"Special Issue No. 25: What sum of money, if paid now, do you find from a preponderance of the evidence would reasonably compensate the plaintiff, Bryan Cluck, for his expenses, if any, incurred for medical aid and hospitalization necessary for the treatment of his injuries, if any, sustained by him as a direct and proximate result of the collision in question?

"Answer by stating the amount in dollars and cents," to which the jury answered, "$75.00."

"Special Issue No. 26: What sum of money, if paid now, do you find from a preponderance of the evidence would reasonably compensate the plaintiff, C. W. Hillyer, for the injuries, if any, sustained by him as a direct and proximate result of the collision in question?

"Answer by stating the amount in dollars and cents," to which the jury answered, "$10,000.00."

"Special Issue No. 27: What sum of money, if paid now, do you find from a preponderance of the evidence would reasonably compensate the plaintiff, C. W. Hillyer, for his expenses, if any, incurred for medical aid and hospitalization necessary for the treatment of his injuries, if any, sustained by him as a direct and proximate result of the collision in question?

"Answer by stating the amount in dollars and cents," to which the jury answered, "$108.00."

On the verdict of the jury judgment was rendered in favor of each of the appellees for the amount found in his favor by the jury. Appellant has duly prosecuted its appeal to this court.

### Opinion.

By its first and second propositions, appellant asserts that it was entitled to an instructed verdict because (a) "there was no evidence to raise an issue of negligence on the part of defendant"; (b) the findings of the jury "that the crossing was more than ordinarily dangerous as a nighttime crossing, was contrary to the great weight and vast preponderance of the evidence." We quote the third proposition in full: "Where plaintiff is injured at 1:00 o'clock at night as the result of an automobile in which he is riding being run into the side of a train standing on a railroad crossing as a nighttime crossing, it was error for the court to permit plaintiffs, in support of their contention, to introduce testimony as to how many accidents had happened at that crossing within a given period of time prior to the accident in question, where plaintiffs fail to show a like condition of the crossing, a like condition of the weather, the time, and a like condition of circumstances existing when said former accidents took place." On authority of the Richmond Case, these three points must be overruled. Every contention made here under these three points was made in the Richmond Case and overruled after our most careful consideration. The statement under the third point in this case is in substance the statement under the same point in the Richmond Case.

The issue of unavoidable accident was submitted by the fifteenth question, which was as follows, answered as indicated:

"Special Issue No. 15: Do you find from a preponderance of the evidence that the collision in question in this case was not an unavoidable accident, as that term has been heretofore defined to you?

"Answer it was an unavoidable accident, or it was not an unavoidable accident, as you find the facts to be," to which the jury answered "Yes."

We overrule appellant's proposition that the jury's answer to this question was ambiguous; the answer is clearly to the effect that the collision was not an unavoidable accident. But if an element of ambiguity be conceded, it disappears when all the issues and the jury's answers thereto are construed together. Thus, by answering other issues, the jury found that appellant committed certain acts of negligence, proximately causing the collision. By a necessary implication, these answers excluded the issue of unavoidable accident. A finding that the collision was the result of an unavoidable accident would have been in conflict with the findings that the collision proximately resulted from appellant's negligence. The jury's verdict must be construed to avoid a conflict, if it is reasonably susceptible to that construction. So, if there is an element of ambiguity in the verdict, it should be resolved in support of the judgment. First National Bank of Amarillo v. Rush (Tex.Com.App.) 246 S.W. 349; Merritt v. King (Tex.Civ.App.) 66 S.W. (2d) 464 (error refused); Republic Production Co. v. Collins (Tex.Civ.App.) 41 S.W.(2d) 100 (error dismissed).

Originally, appellees, Bryan Cluck and C. W. Hillyer, filed separate suits against appellant for the damages suffered by them in the collision in issue. With the exception of the description of their injuries, their two trial petitions were identical in every respect. Appellant's trial answers in the two separate suits were verbatim copies each of the other. It thus appears that all the issues in the two cases were identical, except as to the extent of the injuries suffered by appellees. These two cases, as separately filed and numbered and docketed, were called for trial on the 10th day of June, 1935, just five days before the time fixed by law for the adjournment of that term of the district court. When the cases were called for trial, the two appellees presented to the trial court the following motion asking that their separate causes of action be consolidated:

"Now comes C. W. Hillyer (Bryan Cluck), plaintiff in the above entitled and numbered cause, and moves the court to consolidate this cause with Cause No. 5174 entitled Bryan Cluck v. Beaumont, Sour Lake & Western Railroad Co., in order that the two may be tried at one time, and for grounds therefor would respectfully show to the court:

"1. That said causes of action are companion cases and arose out of the same collision, occurring on the 4th day of Sep-

tember, 1931, and that the plaintiff herein and the plaintiff in said Cause No. 5174 were both occupants of an automobile driven by Otis Richmond and that both the plaintiff in this cause and plaintiff in said other cause, No. 5174, were asleep at the time of said collision; that the issues in the two cases are identical, the pleadings of both plaintiffs and the defendant in both cases raising the exact same issues of fact, and in fact, except for certain changes in names, being identical in their allegations; that all of the witnesses in this cause are also witnesses in said other cause, and that the testimony bearing upon both causes would be exactly the same; that all of said witnesses on behalf of the plaintiffs in said causes would have to be brought from a considerable distance in order that the case may be tried, some of them residing in Sour Lake, and Hardin County, and others of them residing in various parts of the State of Texas, and that it would necessitate a great amount of expense for said witnesses to be brought for trial in separate cases, and the ends of justice could be fully achieved by trying both the said causes of action at one time; that the plaintiffs in both of said causes are not in good financial circumstances, and that it would be an undue burden upon them to have the expense of separate trials, which expense could be reduced if both of said causes were tried at one time, and that it would not, in any manner, prejudice the defendant, said defendant being the same in both causes, for said causes to be tried at one time.

"Wherefore, this plaintiff prays that these causes be consolidated and tried as one cause."

That motion was granted on the 10th day of June by the following order:

"On this the 10th day of June, A. D., 1935, came on to be heard the motion of the plaintiffs, Bryan Cluck and C. W. Hillyer in the above entitled and numbered causes to consolidate said causes for trial; and it appearing to the court that the issues of fact involved in said causes are the same, and that the pleadings of the plaintiffs and the defendant in each cause are identical on all facts and that said causes arose out of the same collision and the evidence upon the issues of fact will be the same in each case and that it would be more expedient to try said causes at one time at one trial and

such would not be prejudicial to the right of the defendant Beaumont, Sour Lake & Western Railroad Company, and that the term of the court is about to end, it is therefore ordered by the court that said causes be and the same are hereby consolidated for trial, to which action of the court the defendant then and there duly excepted."

Appellant complains of the order of consolidation by the following proposition:

"Where causes of action are in favor of separate and distinct parties, the facts as to the extent of injuries received by each and the damages to which each may be entitled being wholly different, such causes of action are not such as are permitted to be consolidated under the Texas statutes authorizing the consolidation of suits; it was error of the court, prejudicial to the defendant, to sustain plaintiffs' motions to consolidate the suit of Bryan Cluck and the suit of C. W. Hillyer over the objection of the defendant."

In support of its proposition, appellant makes the following statement:

"There were two suits filed in the District Court, one by the plaintiff Cluck and one by the plaintiff Hillyer, each of whom was a passenger in the automobile involved in this collision. Each of these plaintiffs filed a motion to consolidate his cause with the cause of the other. In each of the causes the defendant appeared and objected to the consolidation and moved that the motions to consolidate be overruled. The trial court granted the motion of the plaintiffs to consolidate the causes, to which the defendant duly excepted."

The only authority cited by appellant is article 2160, Revised Statutes of 1925, which reads as follows:

"Whenever several suits may be pending in the same court, by the same plaintiff, against the same defendant, for causes of action which may be joined, or where several suits are pending in the same court, by the same plaintiff, against several defendants, which may be joined, the court in which the same are pending may, in its discretion, order such suits to be consolidated."

The following is the only argument made under its statement and authorities:

"The defendant's position on this is that the suits were not permitted by law to be consolidated, the defendant did not want

them consolidated, and objected strenuously thereto. We cannot say what effect upon the jury a consideration of the injuries of one party may have had upon the jury's consideration of the injuries to the other. We respectfully submit that for this error these causes should be reversed and remanded for a new trial in each of them."

There is no contention that the amount of the judgment is excessive; the verdict in this case was as conservative in amount as the verdict in the Richmond Case.

In Texas Co. v. Van Deventer, 290 S. W. 560, 568, on this very point this court said:

"The rule forbidding misjoinder of parties and causes of action is a rule of convenience and expediency. This doctrine rests on the consideration that such procedure will consume too much time, confuse the jury, and hinder instead of promote the proper administration of the law. Buckholts State Bank v. Thallman (Tex. Civ.App.) 196 S.W. 687. Within the limits of this rule, the joinder of parties and causes of action is a question resting largely in the discretion of the court. Wolff v. Cohen (Tex.Civ.App.) 281 S.W. 646, 648; Atkinson v. Jackson Bros. (Tex. Civ.App.) 259 S.W. 280; Barton v. Farmers' State Bank (Tex.Com.App.) 276 · S. W. 177; Hammer v. Woods, 6 Tex.Civ. App. 179, 24 S.W. 942."

See, also, Kreis et al. v. Kreis et al. (Tex.Civ.App.) 36 S.W.(2d) 821; Lawrence v. Cananea Consol. Copper Co. (Tex. Civ.App.) 237 S.W. 959; Buckholts State Bank v. Thallman (Tex.Civ.App.) 196 S. W. 687.

In Roy Campbell & Co. v. Rains (Tex. Civ.App.) 66 S.W.(2d) 1108, at page 1109, the court stated:

"There is another theory on which the consolidation of these two cases would not constitute reversible error. It is the policy of the state to avoid a multiplicity of suits, and the question of consolidation of cases is addressed largely to the judicial discretion of the trial judge. Where consolidation has been granted and the complaining party does not show that he has been injured thereby, appellate courts will not set such action aside, and any error thus committed will be held to be harmless error." See, also, 1 Texas Jurisprudence, 677.

It follows that the judgment of the lower court should be in all things affirmed, and it is accordingly so ordered.

Affirmed.